

FILED

MAR - 6 2020

CLERK U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY                    DEPUTY

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

ANTHONY ALEXANDRE,

Petitioner,

v.

PARTICK COVELLO, Warden,

Respondent.

Case No.: 3:19-cv-1563-WQH-AHG

**ORDER:  DENYING PETITION FOR WRIT OF HABEAS CORPUS AND DENYING CERTIFICATE OF APPEALABILITY**

## I.    INTRODUCTION

Anthony Alexandre ("Alexandre" or "Petitioner"), a state prisoner proceeding pro se, has filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 ("Petition" or "Pet."), challenging his San Diego Superior Court conviction in case number SCD236372. (*See* Pet. at 1–2, ECF No. 1.)[1]  The Court has reviewed the Petition, the Answer and Memorandum of Points and Authorities in Support of the Answer, the lodgments, the Traverse and all the supporting documents submitted by both parties.  For the reasons discussed below, the Petition is **DENIED.**

---

[1] Page numbers for the Petition, Answer and Traverse cited in this Report and Recommendation refer to those imprinted by the court's electronic case filing system.

## II.    FACTUAL BACKGROUND

This Court gives deference to state court findings of fact and presumes them to be correct; Petitioner may rebut the presumption of correctness, but only by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1) (West 2006); *see also Parke v. Raley*, 506 U.S. 20, 35–36 (1992) (holding findings of historical fact, including inferences properly drawn from those facts, are entitled to statutory presumption of correctness). The California Court of Appeal summarized the facts as follows:

> On June 3, 2011, Elisabetta Mantuano and Alexandre, who were involved in a romantic relationship, met for dinner at a restaurant in Pacific Beach. At the dinner, Mantuano told Alexandre that she wanted to end their relationship, which prompted Alexandre to become angry and raise his voice. They left the restaurant and headed to Mantuano's car while Alexandre yelled at Mantuano.
>
> Mantuano tried to get into her car, but Alexandre grabbed her shoulders and blocked her from opening the door. She yelled for him to leave her alone and that she wanted to leave. Mantuano told Alexandre she was going to call the police. Alexandre then grabbed her phone out of her hand. Mantuano was able to get inside her car, but Alexandre grabbed and pulled her hand to prevent her from starting the car, breaking Mantuano's finger. A bystander called 911, but Alexandre fled before police arrived. In July 2011, after she discovered she was pregnant, Mantuano tried to mend her relationship with Alexandre. However, they continued to argue and Alexandre continued to be jealous of her other relationships and told her he doubted the baby was his.
>
> On July 30, 2011, Alexandre began arguing with Mantuano over his feelings of jealousy. She asked him to leave and to "get out of [her] life." Alexandre refused to leave and when Mantuano tried to leave, he told her to sit on the bed and "calm down." Mantuano began screaming for him to leave, or to let her leave, and he told her that if she did not calm down he would hurt the baby or terminate the pregnancy himself. A neighbor called the police. Yet, when the police arrived, Alexandre had Mantuano pinned against the bed and threatened that if she answered the door, her life and the baby's life were finished. Mantuano could not answer the door and Alexandre did not leave the apartment that night.

/ / /

The next day, Alexandre continued arguing with Mantuano, threatening her and refusing to leave. When she said that she was going to leave, he ripped her bag out of her hands and she ran to the door. He grabbed Mantuano and told her she could not leave. She went to her bedroom and tried to lock the door, but he punched the door, leaving a hole. As Mantuano tried to take cover on the floor by the bed, Alexandre pulled her out by her feet, lifted her up, and shook her. Mantuano successfully diffused the situation by calming down. As soon as Alexandre fell asleep, Mantuano left the apartment and called the police. When she returned to the apartment to wait for the police, Alexandre had left.

Between July 31, 2011 and August 30, 2011, Alexandre called Mantuano 50 or more times per day, texted her 20 or more times per day, and showed up uninvited to her apartment multiple times. Mantuano made it clear during this time that she no longer wanted any relationship with Alexandre.

On August 7, 2011, when Mantuano came home from Mass with her friend, Mathew Blackburn, Alexandre was inside the gated area of her apartment complex and asked to speak with her. Mantuano did not want to speak with Alexandre, but agreed so that he would not reveal her pregnancy to Blackburn. They went to her apartment, but Mantuano left her front door open. Blackburn, who knew Mantuano was afraid of Alexandre, remained nearby. Alexandre was furious that Mantuano was with a male friend and began raising his voice. Blackburn went into the apartment and Alexandre threatened him. Mantuano told Alexandre to leave, but he refused to do so until Blackburn threatened to call the police.

On August 11, 2011, Alexandre sent Mantuano a text message that said, "you want to be rude to me. You will watch me. You [sic] rude so I have no reason not to make you pay for all of the pain that you caused me. You're going to regret this for sure." Mantuano feared for her life. Alexandre showed up at her apartment 20 minutes later asking to look in her car for his cell phone charger.

On August 13, 2011, Blackburn escorted Mantuano to a Bank of America branch. As she walked up to the ATM, she saw Alexandre. She turned to go back to her car and Alexandre started yelling, asking who was with her. Alexandre told Blackburn that he was going to "ruin [his] life" and "you have no idea who I am. You are dead. I'll kill you." Alexandre did not leave until Mantuano and Blackburn told him they were going to call the

police. That same day, Alexandre sent a text message to Mantuano that he had contacted her boss and that she would never work in the United States again. When she did not respond to his text message, he sent her a video of himself on top of a building, threatening to kill himself.

(Lodgment No. 3 at 2–5, ECF No. 8-21.)

## III.   PROCEDURAL BACKGROUND

A criminal complaint was filed against Alexandre on September 7, 2011, charging him with corporal injury to a spouse or roommate (Cal. Penal Code § 273.5(a) (count one)); stalking (Cal. Penal Code § 646.9(a) (count two)); and false imprisonment by violence, menace, fraud or deceit (Cal. Penal Code §§ 236 & 237(a) (count three)). (*See* Lodgment No. 2, vol. 6 at 903–04, ECF No. 8-7.) An arrest warrant was issued the same day. (*See* Pet., Ex. E at 65–67, ECF No. 1.)

Nearly four years later, Petitioner was arrested in New York and extradited to California. (*See* Lodgment No. 2, vol. 6 at 903–04, ECF No. 8-7.) On October 19, 2015, Alexandre was arraigned on the three counts contained in the original 2011 complaint. (Lodgment No. 1 at 208, ECF No. 8-1.) A preliminary hearing was held on November 20, 2018, at which time the complaint was amended to add an additional count— attempting to dissuade a witness from reporting a crime (Cal. Penal Code § 136.1(b)(1) (count four)). (Lodgment No. 1 at 216, ECF No. 8-1.) Alexandre was arraigned on the four-count information on December 8, 2015. (Lodgment No. 1 at 1–3, 217, ECF No. 8-1.) In addition, the information alleged that, as to count one, Alexandre had personally inflicted great bodily injury on the victim (Cal. Penal Code §§ 12022.7(a), 12022.7(e), 1192.7(c)(8)). (Lodgment No. 1 at 2, ECF No. 8-1.)

Alexandre's defense counsel moved for dismissal on speedy trial and due process grounds. (Lodgment No. 1 at 10–11, ECF No. 8-1.) The trial court held a six-day hearing and, after making numerous factual findings and balancing the reasons for the delay and possible prejudice, denied the motion on February 10, 2016. (*See id.* at 222– 32; *see also* Lodgment No. 2, vol. 6 at 904–23, ECF No. 8-7.) The trial judge concluded

3:19-cv-1563-WQH-AHG

1   Alexandre failed to establish actual prejudice from the delay. (*See id.* at 11–23.) Jury

2   trial began on February 17, 2016. (Lodgment No. 1 at 234, ECF No. 8-1.)   On February

3   26, 2016, the jury found Alexandre guilty on all four counts. (*See id.* at 259–65; *see also*

4   Lodgment No. 2, vol. 14 at 2290–92, ECF No. 8-15.)   The jury also found the great

5   bodily injury allegation to be true. (*See* Lodgment No. 1 at 261–62, ECF No. 8-1; *see*

6   *also* Lodgment No. 2, vol. 14 at 2290–91, ECF No. 8-15.)   On March 28, 2016, the trial

7   court sentenced Alexandre to seven years, four months in prison.[2]   (Lodgment No. 1 at

8   267–68, ECF No. 1; *see also* Lodgment No. 2, vol. 15 at 3238, ECF No. 8-16.)

9        Alexandre appealed his conviction to the California Court of Appeal, claiming that

10   his right to a speedy trial was violated, he received ineffective assistance of counsel at

11   sentencing and his sentence was erroneous. (*See generally*, Lodgment No. 3 at 14–35,

12   ECF No. 8-18.)   On August 7, 2017, the appellate court affirmed Alexandre's conviction.

13   (*See* Lodgment No. 6, ECF No. 8-21.)   On September 15, 2017, Petitioner filed a petition

14   for review in the California Supreme Court, raising the same claims he had raised in the

15   appellate court. (*See* Lodgment No. 7, ECF No. 8-19.)   The court denied the petition

16   without comment or citation on October 18, 2017.   (Lodgment No. 8, ECF No. 8-20.)

17        On July 23, 2018, Alexandre filed a petition for writ of habeas corpus in San Diego

18   County Superior Court, arguing (1) the trial court lacked jurisdiction to charge him with

19   attempting to dissuade a witness from testifying (Cal. Penal Code § 136.1(b)(1) (count

20   four)); (2) his due process rights were violated because the jury was improperly

21   instructed on the burden of proof and the requisite intent; (3) he received ineffective

22   assistance of trial counsel; (4) he was denied due process because he was prevented from

---

25   [2] The court sentenced Alexandre to three years on count one, plus an additional three

26   years for the great bodily injury enhancement, plus eight months on count two and eight

     months on count three, each to run consecutively, and finally, an eight month term on

27   count four was stayed pursuant to California Penal Code § 654, for a total term of seven

     years, four months. (*See* Lodgment No. 1 at 267–68, ECF No. 8-1; *see also* Lodgment

28   No. 2, vol. 15 at 3236–38, ECF No. 8-16.)

1  presenting exculpatory evidence; (5) his sentence was improper because the People's

2  statement in aggravation and the presentencing probation report were inaccurate; (6) the

3  cumulative effect of the trial errors amounted to a violation of due process; and (7)

4  appellate counsel was ineffective for failing to raise the claims contained in the habeas

5  petition on direct appeal. (*See* Lodgment No. 9, ECF No. 8-24.)

6      On November 16, 2018, while Alexandre's habeas petition was still pending before

7  the San Diego County Superior Court, he filed another petition for writ of habeas corpus

8  with the California Court of Appeal, raising the same seven claims. (Lodgment No. 10,

9  ECF No. 8-22.) On December 13, 2018, the appellate court denied the petition in a

10  reasoned opinion. (Lodgment No. 11, ECF No. 8-26.) The court noted that Petitioner

11  "first attempted to seek habeas corpus relief in the superior court, but the court never

12  ruled on his petition despite repeated attempts by Alexandre to secure a decision." (*Id.* at

13  1.) The appellate court went on to state that "given the delay by the superior court. . .

14  [and the] unusual circumstances" it would "consider [Petitioner's] claims despite the

15  absence of a ruling by the superior court." (*Id.*)  The court then denied the claims as

16  procedurally barred and on the merits. (*See id.* at 1–2.)

17      On December 20, 2018, one week after the appellate court's decision, the superior

18  court issued its opinion, denying Alexandre's habeas petition in a reasoned decision.

19  (Lodgment No. 12, ECF No. 8-27.) Alexandre then filed a habeas petition in the

20  California Supreme Court, raising the same claims, on January 10, 2019. (Lodgment No.

21  13, ECF No. 8-28.) On July 10, 2019, the court denied the petition without comment or

22  citation. (Lodgment No. 14, ECF 8-29.)

23      On August 19, 2019, Alexandre, proceeding pro se, filed the instant federal

24  petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 in this Court. (ECF No.

25  1.) On October 28, 2019, Respondent filed an Answer, a Memorandum of Points and

26  Authorities in Support of the Answer and Lodgments of the state court records. (ECF

27  Nos. 7 & 8.) Petitioner filed a Traverse on December 2, 2019. (ECF No. 9.)

28  ///

6

IV.    **SCOPE OF REVIEW**

Alexandre's Petition is governed by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *See Lindh v. Murphy*, 521 U.S. 320 (1997). Under AEDPA, a habeas petition will not be granted unless the adjudication: (1) resulted in a decision that was contrary to, or involved an unreasonable application of clearly established federal law; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented at the state court proceeding. 28 U.S.C. § 2254(d); *Early v. Packer*, 537 U.S. 3, 8 (2002).

A federal court is not called upon to decide whether it agrees with the state court's determination; rather, the court applies an extraordinarily deferential review, inquiring only whether the state court's decision was objectively unreasonable. *See Yarborough v. Gentry*, 540 U.S. 1, 4 (2003); *Medina v. Hornung*, 386 F.3d 872, 877 (9th Cir. 2004). In order to grant relief under § 2254(d)(2), a federal court "must be convinced that an appellate panel, applying the normal standards of appellate review, could not reasonably conclude that the finding is supported by the record." *See Taylor v. Maddox*, 366 F.3d 992, 1001 (9th Cir. 2004).

A federal habeas court may grant relief under the "contrary to" clause if the state court applied a rule different from the governing law set forth in Supreme Court cases, or if it decided a case differently than the Supreme Court on a set of materially indistinguishable facts. *See Bell v. Cone*, 535 U.S. 685, 694 (2002). The court may grant relief under the "unreasonable application" clause if the state court correctly identified the governing legal principle from Supreme Court decisions but unreasonably applied those decisions to the facts of a particular case. *Id.* Additionally, the "unreasonable application" clause requires that the state court decision be more than incorrect or erroneous; to warrant habeas relief, the state court's application of clearly established federal law must be "objectively unreasonable." *See Lockyer v. Andrade*, 538 U.S. 63, 75 (2003). "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied

1   clearly established federal law erroneously or incorrectly.  Rather, that application must

2   also be unreasonable." *Williams v. Taylor*, 529 U.S. 362, 411 (2000).  "A state court's

3   determination that a claim lacks merit precludes federal habeas relief so long as

4   'fairminded jurists could disagree' on the correctness of the state court's decision."

5   *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541

6   U.S. 652, 664 (2004)).

7        Where there is no reasoned decision from the state's highest court, the Court

8   "looks through" to the "last reasoned state-court opinion" and presumes it provides the

9   basis for the higher court's denial of a claim or claims.  *Ylst v. Nunnemaker*, 501 U.S.

10  797, 804–05 (1991); *see Ylst*, 501 U.S. at 803 ("Where there has been one reasoned state

11  judgment rejecting a federal claim, later unexplained orders upholding that judgment or

12  rejecting the same claim rest upon the same ground.").  If the dispositive state court order

13  does not "furnish a basis for its reasoning," federal habeas courts must conduct an

14  independent review of the record to determine whether the state court's decision is

15  contrary to, or an unreasonable application of, clearly established Supreme Court law.

16  *See Delgado v. Lewis*, 223 F.3d 976, 982 (9th Cir. 2000) (overruled on other grounds by

17  *Andrade*, 538 U.S. at 75–76); *accord Himes v. Thompson*, 336 F.3d 848, 853 (9th Cir.

18  2003).  However, a state court need not cite Supreme Court precedent when resolving a

19  habeas corpus claim.  *See Early*, 537 U.S. at 8.  "[S]o long as neither the reasoning nor

20  the result of the state-court decision contradicts [Supreme Court precedent,]" *id.*, the state

21  court decision will not be "contrary to" clearly established federal law.  *Id.*  Clearly

22  established federal law, for purposes of § 2254(d), means "the governing principle or

23  principles set forth by the Supreme Court at the time the state court renders its decision."

24  *Andrade*, 538 U.S. at 72.

25  V.   **DISCUSSION**

26       In his federal petition, Alexandre raises the same seven claims he raised in his

27  petitions for habeas corpus to the California courts:  (1) the trial court lacked subject

28  matter jurisdiction over count four because it was brought after the applicable statute of

1  limitations had expired; (2) his due process rights were violated because the jury was

2  improperly instructed; (3) he received ineffective assistance of trial counsel, in violation

3  of his Sixth Amendment rights; (4) his due process rights were violated because he was

4  prevented from presenting witnesses and evidence in his defense; (5) his due process

5  rights were violated because the trial court relied on purportedly erroneous evidence in

6  determining his sentence; (6) the cumulation of errors amounted to a violation of due

7  process (7) he received ineffective assistance of appellate counsel, in violation of his

8  Sixth Amendment rights. (*See* Pet. at 26–47, ECF No. 1.)

9      Respondent argues that claims one, two, four and five are barred from federal

10  review because they are procedurally defaulted. (Mem. P. & A. Supp. Answer at 10–11,

11  13, 15–16, 18, ECF No. 7-1.)  Furthermore, Respondent asserts all of Petitioner's claims

12  fail on the merits. (*See id.* at 11–18.)

13      **A.      Procedural Default**

14      Respondent argues claims one, two, four, and five raised in Alexandre's federal

15  petition are barred from habeas review because they are procedurally defaulted. (*See id.*

16  at 10–11, 13, 15, 18 ECF No. 7-1.)   Alexandre raised these claims in his petition for

17  review to the California Supreme Court, which denied the petition without comment or

18  citation. (*See* Lodgment Nos. 13, 14, ECF Nos. 8-28, 8-29.)  This Court therefore looks

19  through to the last reasoned decision by a state court. *See Ylst*, 501 U.S. at 805–06.

20  Here, that is the decision of the Superior Court of San Diego County.[3]  In its order

21  denying Alexandre's petition, the court found the claims procedurally barred under

---

[3] The superior court issued a reasoned decision on Alexandre's petition after the court of
appeal issued a reasoned decision on Alexandre's petition and before Alexandre filed a
petition in the supreme court. *See* Cal. Const., art. VI, § 10 (all California courts,
including the California Supreme Court, have original jurisdiction to hear petitions for
writs of habeas corpus).  The Court concludes that the decision of the superior court is the
"last reasoned state-court opinion" on each of Alexandre's claims. *Ylst*, 501 U.S. at 805.
However, the Court's conclusions in this Order would be the same if the Court "look[ed]
through" to the earlier reasoned decision of the California Court of Appeal. *Id.* at 804.

California law, stating:

> "A litigant is not entitled to raise an issue on habeas corpus after having failed to raise the same issue on direct appeal." (*In re Reno* (2012) 55 Cal. 4th 428, 490.) . . . Applying these principles to this matter, petitioner's first, second, fourth, fifth, and sixth claims could have been raised on appeal but were not. As such, those claims are procedurally barred.

(Lodgment No. 12 at 2, ECF No. 8-27.)   Because the superior court clearly found Petitioner could have, but failed to, raise these claims on direct review, this Court presumes the California Supreme Court found the claims barred for the same reason. *See Lee v. Jacquez*, 788 F.3d 1124, 1133 (9th Cir. 2015) ("If the California Supreme Court denies a habeas petition without explanation, the federal courts will presume that a procedural default was imposed if 'the last reasoned opinion on the claim explicitly impose[d] a procedural default.'")

"The procedural default doctrine 'bar[s] federal habeas [review] when a state court decline[s] to address a prisoner's federal claims because the prisoner has failed to meet a state procedural requirement.'" *Calderon v. United States District Court*, 96 F.3d 1126, 1129 (9th Cir. 1996) (quoting *Coleman v. Thompson*, 501 U.S. 722, 729 (1991)). The doctrine "'is a specific application of the general adequate and independent state grounds doctrine.'" *Calderon*, 96 F.3d at 1129 (quoting *Wells v. Maass*, 28 F.3d 1005, 1008 (9th Cir. 1994)). Federal courts "will not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment." *Coleman*, 501 U.S. at 729; *Park v. California*, 202 F.3d 1146, 1151 (9th Cir. 2000).

The Ninth Circuit has held that because procedural default is an affirmative defense, Respondent must first "adequately ple[a]d the existence of an independent and adequate state procedural ground." *Bennett v. Mueller*, 322 F.3d 573, 586 (9th Cir. 2003). Once the defense is placed at issue, the burden shifts to the petitioner, who must then "assert[] specific factual allegations that demonstrate the inadequacy of the state procedure. . . ." *Id.* The "ultimate burden" of proving procedural default, however,

1 │ belongs to the state. *Id.* If the state meets this burden, federal review of the claim is

2 │ foreclosed unless the petitioner can "demonstrate cause for the default and actual

3 │ prejudice as a result of the alleged violation of federal law, or demonstrate that failure to

4 │ consider the claims will result in a fundamental miscarriage of justice." *Coleman*, 501

5 │ U.S. at 750.

6 │     As noted above, the state court found Alexandre's first, second, fourth, fifth and

7 │ sixth[4] claims were barred from review under California law because he failed to raise the

8 │ claims first on direct appeal. This rule is commonly known as the "*Dixon* bar." *See*

9 │ *Johnson v. Lee*, —U.S.—, 136 S. Ct. 1802, 1804 (2016) (stating that "[u]nder the so-

10 │ called '*Dixon* bar,' a defendant procedurally defaults a claim raised for the first time on

11 │ state collateral review if he could have raised it earlier on direct appeal") (citing *In re*

12 │ *Dixon*, 55 Cal. 4th 428, 490 (Cal. 1953)); *see also In re Reno*, 55 Cal. 4th 428, 490 (Cal.

13 │ 2012).

14 │     Respondent asserts the *Dixon* bar is an independent and adequate state procedural

15 │ bar. (*See* Mem. P. & A. Supp. Answer at 10–11, ECF No. 7-1.) As such, the burden

16 │ shifts to Alexandre. *See Bennett*, 322 F.3d at 586. For his part, Petitioner has failed to

17 │ allege any specific facts that demonstrate the *Dixon* rule's inadequacy and therefore has

18 │ not met his burden. *See id.* Moreover, federal courts have recognized the *Dixon* bar is

19 │ both adequate and independent state procedural rule. *See Johnson*, 136 S. Ct. at 1804

20 │ (concluding *Dixon* bar is "firmly established and regularly followed" and therefore

21 │ "adequate"); *see also Johnson v. Montgomery*, 899 F.3d 1052, 1060 (9th Cir. 2018)

22 │ (recognizing that California's *Dixon* bar is an adequate and independent state law ground

23 │ to bar federal habeas review); *see also Cook v. Kernan*, — Fed. App'x —, 2020 WL

24 │ 354623, *1 (9th Cir. Jan. 21, 2020) (stating "California's *Dixon* bar has been upheld as an

25 │

26 │

27 │ [4] Although the state court procedurally barred claim six, in which Alexandre alleges a

28 │ due process violation based on cumulative error, Respondent does not argue that claim is
    procedurally defaulted. (*See* Mem. P. & A. Supp. Answer at 19–20, ECF No. 7-1.)

1   adequate and independent procedural ground capable of barring federal habeas review").

2   Therefore, claims one, two, four and five are procedurally defaulted.

3        Federal courts may still review procedurally defaulted claims if the petitioner

4   meets one of two exceptions: (1) a showing of adequate legal cause for the default and

5   prejudice arising from the default, or (2) a showing of a miscarriage of justice. *See*

6   *Schlup v. Delo*, 513 U.S. 298, 321 (1995); *Coleman*, 501 U.S. at 750; *Wainwright v.*

7   *Sykes*, 433 U.S. 72, 87 (1977); *Cook v. Schriro*, 538 F.3d 1000, 1025–26 (9th Cir. 2008).

8        To establish cause, Alexandre must show that "some objective factor external to

9   the defense" or constitutionally ineffective assistance of counsel impeded his efforts to

10   comply with the state's procedural rule. *See Murray v. Carrier*, 477 U.S. 478, 488

11   (1986). For ineffective assistance of counsel to constitute cause, the ineffective

12   assistance claim must have been presented as an independent claim to the state courts.

13   *Id.* at 489. Moreover, Petitioner must establish that his attorney was "constitutionally

14   ineffective under the standard established in *Strickland v. Washington*, [466 U.S. 668

15   (1984)]." *Murray*, 477 U.S. at 488.

16        Here, Alexandre claims defense counsel's ineffectiveness is cause for the default.

17   (*See* Traverse at 3, 5, ECF No. 9.) Petitioner raised ineffective assistance of counsel

18   claims in his petitions for writ of habeas corpus to the California courts. (*See* Lodgment

19   No. 9, ECF No. 8-24; *see also* Lodgment No. 10, ECF No. 8-25.) He argued, among

20   other things, that both trial counsel and appellate counsel were ineffective in failing to

21   raise claims one, two, four and five first in state court. (*See id.*) But a claim of

22   ineffective assistance of counsel can only constitute cause if it is in itself a constitutional

23   violation. *Martinez v. Ryan*, 566 U.S. 1, 17–18; *Edwards*, 529 U.S. at 451–52. As

24   discussed below in sections V(B)(5)–(6), Alexandre has not established that trial or

25   appellate counsel was ineffective under *Strickland*.

26        Nor has he established either actual prejudice or a fundamental miscarriage of

27   justice. "Prejudice [sufficient to excuse procedurally barred claims] is actual harm

28   resulting from the alleged error." *Vickers v. Stewart*, 144 F.3d 613, 617 (9th Cir. 1998).

1  Supreme Court has limited the "miscarriage of justice" exception to petitioners who can
2  show that "a constitutional violation has probably resulted in one who is actually
3  innocent." *Schlup*, 513 U.S. at 327; *see McQuiggin v. Perkins*, 569 U.S. 383, 393–94
4  (2013); *Johnson v. Knowles*, 541 F.3d 933, 936–38 (9th Cir. 2008) ("The miscarriage of
5  justice exception is limited to those extraordinary cases where the petitioner asserts his
6  innocence and establishes that the court cannot have confidence in the contrary finding of
7  guilt."). Here, Alexandre cannot establish actual prejudice or a fundamental miscarriage
8  of justice because, as discussed in sections V(B)(1)–(4), the claims are meritless.

9       In sum, the state court denied claims one, two, four and five pursuant to adequate
10  and independent state procedural grounds that were correctly applied and as such, federal
11  habeas review of claims one, two, four and five are procedurally defaulted. *See Coleman*,
12  501 U.S. at 729–30. For the reasons discussed below, the four procedurally defaulted
13  claims also lack merit and thus, counsel was not constitutionally ineffective for failing to
14  raise them on direct appeal. *See Martinez*, 566 U.S. at 17–18. In addition, Petitioner has
15  failed to establish cause and prejudice or a miscarriage of justice sufficient to overcome
16  the *Dixon* bar. *See Schlup*, 513 U.S. at 327; *Vickers*, 144 F.3d at 617. Therefore the
17  claims one, two, four and five are barred from federal habeas review. Nevertheless,
18  because the defaulted claims' lack of merit is an integral part of the Court's analysis, the
19  Court addresses the merits of each claim, below.

20       **B.   Merits**

21       As noted above, Alexandre raises seven claims, presented in the same order he
22  raised them in the California state courts. For the ease of analysis, however, the Court
23  will discuss the four procedurally defaulted claims first, followed by Petitioner's claims
24  of ineffective assistance of trial and appellate counsel and, finally, cumulative error.

25       *1.    Jurisdiction as to Count Four (Ground One)*

26       In ground one, Petitioner contends the trial court lacked jurisdiction to try him on
27  count four, attempting to dissuade a witness from reporting a crime (Cal. Penal Code

28

13

§ 136.1(b)(1)), because the statute of limitations had expired.[5]  (*See* Pet. at 26–32, ECF No. 1.)  Specifically, he claims that the three-year statute of limitations should not have been tolled under California law because he was living in California for the relevant time period.  (*See id.*)  Respondent contends Alexandre's claim fails to present a federal question and fails on the merits.  (Mem. P. & A. Supp. Answer at 10–13, ECF No. 7-1.)

As noted above, Alexandre raised this claim in his petition for writ of habeas corpus to the California Supreme Court, which was denied without comment or citation.  (*See* Lodgment Nos. 13, 14, ECF Nos. 8-28, 8-29.)  This Court therefore looks through that denial to the last reasoned state court decision. *See Ylst*, 501 U.S. at 805–06.  Here, that is the decision of the superior court.  (*See* Lodgment No. 12 at 3–4, ECF No. 8-27.)  Having first concluded the claim was procedurally barred, the court went on to also deny the claim on the merits, stating:

> Petitioner argues that the addition of Count 4, the violation of section 136.1(b)(1), was barred by the statute of limitations.  Petitioner also argues that the complaint was not properly amended to add Count 4 and that he was not properly arraigned on Count 4.
>
> In reviewing a petition for writ of habeas corpus, the court presumes the regularity of proceedings that resulted in a final judgment. (*Ex parte Bell* (1942) 19 Cal.2d 488, 500.) "[A]ll presumptions favor the truth, accuracy, and fairness of the conviction and sentence; defendant thus must undertake the burden of overturning them." (*In re Reno*, supra, 55 Cal. 4th at 451.)  Vague or conclusory allegations do not warrant habeas relief, and the petition must state fully and specifically the facts justifying relief and include reasonably available supporting evidence. (*People v. Duvall* (1995) 9 Cal. 4th 464, 474.)
>
> Pursuant section 801, the statute of limitations to commence a prosecution for an offense under section 136.1(b)(1) is three years. However, the statute of limitations to commence a criminal action may be

---

[5] To the extent Petitioner also refers in ground one to instances of ineffective assistance of counsel, this Court will address those arguments below in sections V(B)(5)–(6), devoted to Alexandre's separate claims of ineffective assistance of trial counsel and appellate counsel, respectively.

tolled up to a maximum of three years for any time during which the defendant is not within the state. (*People v. Lynch* (2010) 182 Cal. App. 4th 1262, 1271; § 803(d).) Additionally, an accusatory pleading may be amended to add an offense or enhancement that was proved at the preliminary hearing. (*People v. Superior Court (Mendella)* (1983) 33 Cal.3d 754, 764, superseded by statute on other grounds as stated in *In re Jovan B.* (1993) 6 Cal.4th 801, 814, fn. 8.)

Here, a complaint was filed against petitioner on September 7, 2011, charging him with Counts 1 through 3, and an arrest warrant was issued that same day. On October 19, 2015, petitioner was arraigned after being extradited from New York. At the preliminary hearing on November 20, 2018, the complaint was amended to add Count 4 for an incident that occurred on or about June 3, 2011, and that involved the same events as Counts 1 and 3. Petitioner was then arraigned on an information containing Count 4 on December 8, 2015. Petitioner's assertions that the complaint was improperly amended and that he was improperly arraigned are therefore incorrect.

The sentencing memorandum filed by petitioner indicates that his permanent residence was in New York, and that he resided in New York both before and after the offense in Count 4 occurred. Petitioner acknowledges in the petition that he was in New York and Florida after the offense in Count 4 occurred. Petitioner was also extradited from New York. The record therefore establishes that petitioner was outside of California after the offense in Count 4 occurred, during which time the statute of limitations would be tolled. Petitioner has not provided any evidence or allegations as to the duration of his presence in California during the relevant time period, therefore he has failed to show that the statute of limitations was not sufficiently tolled. Accordingly, petitioner has failed to show deficient representation regarding this claim.

(Lodgment No. 12 at 3–4, ECF No. 8-27.)

To the extent Alexandre argues the state court erroneously applied California law regarding the statute of limitations, he fails to state a cognizable claim on federal habeas. Federal habeas relief is unavailable for violations of state law or for alleged error in the interpretation of application of state law. *See Swarthout v. Cooke*, 562 U.S. 216, 220 (2011); *Estelle v. McGuire*, 502 U.S. 62, 67 (1991) ("We have stated many times that

1   'federal habeas corpus relief does not lie for errors of state law.'"); *Pulley v. Harris*, 465

2   U.S. 37, 41 (1984) (stating federal courts may not grant habeas relief on the basis of a

3   perceived error of state law").  A federal court will examine a state court's interpretation

4   of its laws or constitution only where it is clearly shown that such state judicial

5   interpretations violate fundamental rights guaranteed by the Constitution of

6   / / /

7   the United States. *See Bonin v. Calderon*, 59 F.3d 841 (9th Cir. 1995).  Alexandre has

8   not alleged a Constitutional violation.

9          Moreover, in reviewing the claim on state habeas, the superior court specifically

10   determined that the trial court did not violate the applicable statute of limitations in

11   prosecuting Alexandre, (*see* Lodgment No. 10 at 3), and this court cannot second-guess

12   that determination.  A state court's interpretation of state law, including one announced

13   on appeal of the challenged conviction, binds a federal court sitting in habeas corpus.

14   *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *Hicks v. Feiock*, 485 U.S. 624, 629 (1988).

15   Here, the state court concluded that Alexandre failed to present any evidence to support

16   his allegation that he resided in California during the relevant time period.  As the court

17   observed, documents submitted during trial proceedings indicated Petitioner was a

18   permanent resident of New York both before and after the 2011 incident. (*See* Lodgment

19   No. 1 at 177, ECF No. 1.)  This Court defers to that factual determination. *See Parke*,

20   506 U.S. at 35–36.  Therefore, Alexandre has failed to state a cognizable federal claim.

21          Further, to the extent Alexandre attempts to argue the erroneous application of the

22   state's statute of limitations amounted to a due process violation, he is not entitled to

23   relief.  As discussed above, habeas relief is only available under 28 U.S.C. § 2254(d) if

24   the state court's denial of the claim was "contrary to, or an unreasonable application of,

25   clearly established law" or an "unreasonable determination of the facts in light of the

26   state court record." 28 U.S.C. § 2254(d); *Early v. Packer*, 537 U.S. 3, 8 (2002).  Here,

27   Alexandre has identified no "clearly established federal law" which prohibits conviction

28   on criminal charges merely because they were brought past a state statute of limitations,

1   as opposed to the general Fifth Amendment due process protection from prejudicial pre-

2   trial delay. *See Loeblein v. Dormire*, 229 F.3d 724, 726 (8th Cir. 2000) ("[A] state

3   court's failure properly to apply a state statute of limitations does not violate due process

4   or, indeed, any other provision of the Constitution or a federal statute.") "Perhaps it is

5   better stated that "a state's misapplication of its own statute of limitations does not violate

6   federal due process per se." *Belvin v. Addison*, 561 Fed. Appx. 684, 686 (10th Cir. 2014)

7   (unpublished decision, citing *Loeblin*); *see also Neese v. Ryan*, 2017 WL 5157250, at *12

8   (D. Ariz. Aug. 16, 2017); *Suong v. Cate*, 2014 WL 727138, at *11 (E.D. Cal. Feb. 24,

9   2014). Thus, because there is no clearly established law, the state court's rejection of this

10  claim cannot be contrary to, or an unreasonable application of, clearly established federal

11  law. *See Carey v. Musladin*, 549 U.S. 70, 77 (2006) ("Given the lack of holdings from

12  this Court. . . , it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly

13  established Federal law.'")

14         Alexandre appears to argue the state court made an unreasonable determination of

15  the facts as to this claim. He contends the state court erroneously concluded the statute of

16  limitations was tolled based on "unsubstantiated facts that are not supported by the

17  record." (Pet. at 27, ECF No. 1.) Alexandre claims he resided in California until late

18  2014, after the statute of limitations had expired, and the superior court's finding that he

19  resided in New York for at least part of that time was erroneous. (*Id.*) As the superior

20  court observed, documents in the record submitted by the defense indicate Alexandre's

21  residence was indeed in New York. (*See* Lodgment No. 1 at 12, 177, ECF No. 8-1.)

22  Petitioner's self-serving and conclusory allegations to the contrary are insufficient to

23  support habeas relief. *See Jones v. Gomez*, 66 F.3d 199, 204 (9th Cir. 1995); *James v.

24  Borg*, 24 F.3d 20, 26 (9th Cir. 1994) (conclusory allegations not supported by specific

25  facts in petition do not warrant habeas relief). As such, he has failed to establish the state

26  court based its decision on an unreasonable determination of facts. *See Taylor*, 366 F.3d

27  at 1001.

28         In sum, the state court's denial of the claim was neither contrary to, nor an

1  unreasonable application of, clearly established federal law. *See Williams*, 529 U.S. at

2  412–13; 28 U.S.C. §2254(d)(1). Moreover, the state court's adjudication did not involve

3  an "unreasonable determination of the facts in light of the evidence presented in the state

4  court proceedings," because Petitioner has not demonstrated that the state court factual

5  findings are objectively unreasonable. *See Miller-El v. Cockrell*, 537 U.S. 322, 340

6  (2003); 28 U.S.C. § 2254(d)(2). Therefore, claim one is **DENIED.**

7            2.      *Jury Instructions (Ground Two)*

8            In ground two, Alexandre claims his due process rights were violated when the

9  trial court failed to properly instruct the jury. Specifically, he argues the court failed to

10  instruct the jury that it must find the sentencing enhancement for great bodily injury

11  under California Penal Code section 12022.7(a) to be true "beyond a reasonable doubt."

12  (*See* Pet. at 32, ECF No. 1.) He further contends the jury was not properly instructed on

13  the intent requirement for count one and the sentencing enhancement. (*See id.* at 32–33.)

14  Finally, he argues the jury was improperly instructed on the elements of count four

15  because the statute of limitations had expired for bringing charges on that count. (*Id.* at

16  34–35.)

17            Petitioner raised this claim in his petition for writ of habeas corpus to the

18  California Supreme Court, which was denied without comment or citation. (*See*

19  Lodgment Nos. 13, 14, ECF Nos. 8-28, 8-29.) As such, this Court looks through to the

20  reasoned opinion of the superior court. *See Ylst*, 501 U.S. at 805–06. As discussed

21  above, the superior court concluded the claim was procedurally barred for failure to raise

22  it on appeal. (*See* Lodgment No. 12 at 2.) The court then went on to also deny the claim

23  on the merits, stating in relevant part:

24            Petitioner argues that the jury should not have been instructed on
         Count 4 because the court lacked jurisdiction to charge that count due to the
25         expiration of the statute of limitations. As discussed above, petitioner's
         claim under the statute of limitations is denied, therefore this argument lacks
26         merit. Petitioner also argues that he was deprived due process and a fair trial
         because the trial court did not advise the jury that petitioner must be found
27         guilty beyond a reasonable doubt for the section 12022.7(a) enhancement on

28

1   Count 1, and because the jury was not instructed find the requisite intent
2   under the section 12022.7(a) enhancement on Count 1.

3   The record shows that the jury was given CALCRIM 3160, which
4   provides that the People have the burden of proving the great bodily injury
    allegation beyond a reasonable doubt, and that if the People have not met
5   this burden, the jury must find that the allegation has not been proved.

6   Thus, the jury was properly instructed on the burden of proof under
7   the section 12022.7(a) allegation.

8   As to the requisite intent:

9
        [S]ection 12022.7, subdivision (a) does not require a
10      showing of intent to inflict [great bodily injury], separate or
11      apart from the intent required to commit the felony or attempted
        felony for which the enhancement provision prescribes
12      additional punishment.  Rather, the statute only requires a
13      showing that defendant 'personally inflict[ed]' great bodily
        injury 'in the commission of a felony or attempted felony. . . .'
14      (§ 12022.7, subd. (a).)  Thus, the only intent required to support
15      a [great bodily injury] enhancement under section 12022.7,
        subdivision (a) is the intent required to commit the underlying
16      felony or attempted felony.

17  (*People v. Poroj* (2010) 190 Cal.App.4th 165, 168.)
18

19  The charge under Count 1 was for willful infliction of corporal injury
20  (§ 273.5(a)), which does not require specific intent to injure; rather, it
    requires a willful act which results in injury and is thus a general intent
21  crime.  (*People v. Burton* (2015) 243 Cal. App. 4th 129, 134, fn. 8.)  The
22  jury here was instructed under CALCRIM 252 that the requisite intent for
    Count 1 was that petitioner act with wrongful intent, which is defined as
23  intentionally doing the prohibited act.  The jury was also instructed under
24  CALCRIM 3160 that if it finds petitioner guilty of Count 1, it must then
    decide whether petitioner personally inflicted great bodily injury.  The jury
25  was therefore properly instructed on the requisite intent.  Consequently,
26  petitioner has failed to show deficient representation as to this claim.

27  (Lodgment No. 12 at 5–6, ECF No. 8-27.)

28

1       Even assuming the claim is not procedurally defaulted as discussed above,

2   Alexandre would not be entitled to federal habeas relief.  First, to the extent Alexandre

3   argues the jury instructions were erroneous under California law, his claim is not

4   cognizable on federal habeas.  *See Estelle*, 502 U.S. at 67–68 (holding issues regarding

5   state law are not cognizable on federal habeas corpus review).   An instructional error

6   "does not alone raise a ground cognizable in a federal habeas corpus proceeding."

7   *Dunckhurst v. Deeds*, 859 F.2d 110, 114 (9th Cir. 1988); *see also Van Pilon v. Reed*, 799

8   F.2d 1332, 1342 (9th Cir. 1986) (claims that merely challenge correctness of jury

9   instructions under state law cannot reasonably be construed to allege a deprivation of

10   federal rights).

11       To merit relief when an allegedly erroneous jury instruction is given, or an

12   instruction is omitted, a petitioner must show that the ailing instruction by itself so

13   infected the entire trial that the resulting conviction violates due process.  *See Estelle*, 502

14   U.S. at 71–72; *Henderson v. Kibbe*, 431 U.S. 145, 155 (1977).  For instructional error to

15   amount to a due process violation Petitioner must show both that the instruction was

16   defective and that there was a "reasonable likelihood that the jury applied the instruction

17   in a way that relieved the State of its burden of proving every element of the crime

18   beyond a reasonable doubt."  *Waddington v. Sarausad*, 555 U.S. 179, 190–91 (2009)

19   (quoting *Estelle*, 502 U.S. at 72 (internal quotation marks and citation omitted)); *see also*

20   *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974) ("'[I]t must be established not

21   merely that the instruction is undesirable, erroneous or even "universally condemned,"

22   but that it violated some [constitutional right].'").

23       Here, Alexandre has not established the instructions were erroneous, much less that

24   any purported defect rendered his trial fundamentally unfair.  First, as to the burden of

25   proof, contrary to Petitioner's assertion, the jury was instructed that the People were

26   required to prove all of the allegations beyond a reasonable doubt.  (*See* Lodgment No. 1

27   at 149, ECF No. 8-1; *see also* CALCRIM No. 220.)   The judge defined the standard for

28   the jury and specifically noted that "whenever I tell you the People must prove

1    something, I mean they must prove it beyond a reasonable doubt." (*Id.* at 149.)   The

2    court reiterated the burden of proof when instructing on the great bodily injury

3    enhancement under California Penal Code sections 1192.7(c), 12022.7 and 12022.8,

4    stating,

> If you find the defendant guilty of the crime charged in Count One,
> you must then decide whether the People have proved the additional
> allegation that the defendant personally inflicted great bodily injury on
> Elisabetta Mantuano during the commission of that crime.
>      Great bodily injury means significant or substantial physical injury.  It
> is an injury that is greater than minor or moderate harm.
>
>      The People have the burden of proving each allegation beyond a
> reasonable doubt.  If the People have not met this burden, you must find that
> the allegation has not been proved.

(Lodgment No. 1 at 159, *see also* CALCRIM No. 3160.)

13          Furthermore, as the superior court noted, the jury was properly instructed on the

14   intent requirement as to count one and the great bodily injury enhancements.   Under

15   California law, inflicting injury on a cohabitant pursuant to California Penal Code section

16   273.5(a) requires only general intent. *People v. Thurston*, 71 Cal. App. 4th 1050, 1055–

17   56 (Cal. Ct. App. 1999) (holding that to satisfy the intent element of section 273.5(a), a

18   prosecutor need only show the defendant an intended assaultive act); *see also People v.*

19   *Burton*, 243 Cal. App. 4th 129, 134, fn. 8 (Cal. 2015).   Likewise, the great bodily injury

20   enhancement requires only general intent to commit the underlying felony. *See People v.*

21   *Poroj*, 190 Cal. App. 4th 165, 172 (Cal. Ct. App. 2010).   Here, the jury was so instructed.

22   The judge properly instructed the jury that in order to find Alexandre guilty on count one,

23   it must find that he "willfully inflicted a physical injury on his cohabitant" and that the

24   injury was "inflicted by the defendant resulted in a traumatic condition."   (Lodgment No.

25   1 at 153; *see also* CALCRIM 840.)   And to find the great bodily injury enhancement true,

26   the jury was correctly instructed it must find that Alexandre "personally inflicted great

27   bodily injury" on Mantuano during the commission of count one.   (Lodgment No. 1 at

28

1 │ 159; *see also* CALCRIM No. 3160.)

2 │     In addition, the court instructed the jury on the difference between specific and

3 │ general intent. The jury was specifically instructed that as to count one and "the special

4 │ allegations of [Penal Code sections] 1192.7(c)(23), 12022.7(e) and 1192.7(c)(8) for great

5 │ bodily injury," it must find Alexandre possessed "general intent." (*See id.* at 151; *see*

6 │ *also* CALCRIM 252.) The jury was further instructed that a defendant "must not only

7 │ commit the prohibited act, but must do so with wrongful intent. A person acts with

8 │ wrongful intent when he or she intentionally does a prohibited act; however, it is not

9 │ required that he or she intend to break the law." (*Id.* at 151; *see also* CALCRIM 252.)

10 │ Thus, the trial court properly instructed the jury as to the requisite intent required on each

11 │ count and enhancement.

12 │     Finally, to the extent Alexandre argues there was instructional error due to the

13 │ trial court's purported lack of jurisdiction over count four, his claim is without merit for

14 │ the reasons discussed above in section V(B)(1) of this Order. The state court concluded

15 │ the statute of limitations was tolled as to count four while Petitioner was living outside of

16 │ California. This Court defers to that determination. *Bradshaw*, 546 U.S. at 76

17 │ (concluding that a state court's interpretation of state law binds a federal court on federal

18 │ habeas). Moreover, the trial court properly instructed the jury as to the elements of

19 │ intimidating a witness under California Penal Code section 136.1(b). (*See* Lodgment No.

20 │ 1 at 155; *see also* CALCRIM No. 2622.) Under California law, the statute of limitations

21 │ is not an element of the offense. *People v. Frazer*, 21 Cal. 4th 737, 757–60 (Cal. 1999)

22 │ (overruled on other grounds by *Stogner v. California*, 539 U.S. 607, 627–28 (2003)).

23 │     Therefore, based on the foregoing, the state court's denial of the claim was neither

24 │ contrary to, nor an unreasonable application of, clearly established law. *See Williams*,

25 │ 529 U.S. at 407–08; *see also* 28 U.S.C. § 2254(d)(1). Moreover, the state court's

26 │ adjudication did not involve an "unreasonable determination of the facts in light of the

27 │ evidence presented in the state court proceedings." *See Miller-El*, 537 U.S. at 340; *see*

28 │ *also* 28 U.S.C. § 2254(d)(2). Claim two is **DENIED**.

1

### 3.    *Presentation of Evidence and Witnesses (Ground Four)*

2       Alexandre argues he "suffered a variety of due process violations in not being able

3   to defend against various false statements." (Pet. at 40, ECF No. 1.) He contends he was

4   prevented from presenting exculpatory evidence and confronting witnesses against him

5   because some evidence and witness testimony had become unavailable with the passage

6   of time. (*Id.* at 40–41.) Petitioner raised this claim in his petition for writ of habeas

7   corpus to the California Supreme Court, which was denied without comment or citation.

8   (*See* Lodgment Nos. 13, 14, ECF Nos. 8-28, 8-29.)  In the last reasoned state court

9   decision to address the issue, the superior court found the claim procedurally barred and

10  further denied the claim on the merits, stating:

11          Petitioner alleges that he was denied a fair trial because he was
12          prevented from presenting exculpatory evidence on various issues.
            Petitioner's allegations in this regard are conclusory, and he does not
13          provide or identify the purportedly exculpatory evidence. As such,
14          petitioner has failed to show deficient performance by his counsel in this
            regard.

15

16  (Lodgment No. 12 at 6, ECF No. 8-27.)

17       To the extent Alexandre appears to argue he was deprived an opportunity to

18  present a defense, his claim is conclusory and without merit.  "Due process requires that

19  criminal prosecutions 'comport with prevailing notions of fundamental fairness" and that

20  "criminal defendants be afforded a meaningful opportunity to present a complete

21  defense.'"  *Clark v. Brown*, 442 F.3d 708, 714 (9th Cir. 2006) (quoting *California v.*

22  *Trombetta*, 467 U.S. 479, 485 (1984)).  When a state court excludes certain evidence

23  allegedly essential to presenting a defense, federal habeas relief is warranted only when

24  the exclusion was so prejudicial as to jeopardize the petitioner's due process rights.

25  *DePetris v. Kuykendall*, 239 F.3d 1057, 1062 (9th Cir. 2001) (citing *Chambers v.*

26  *Mississippi*, 410 U.S. 284, 294 (1973) and *Washington v. Texas*, 388 U.S. 14, 18–19

27  (1967)).  Even where the exclusion of evidence amounts to a constitutional violation, the

28  error will only provide grounds to grant a writ of habeas corpus if the error had a

1    "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v.*

2    *Abrahamson*, 507 U.S. 619, 637 (1993) (quoting *Kotteakos v. United States*, 328 U.S.

3    750, 776 (1946)).  In engaging in so-called "harmless error review," the habeas court

4    looks to the "record as a whole." *Id*. at 638.

5          Alexandre argues that "testimony was presented [at trial] that was incapable of

6    being verified as false. . . due to unavailable witnesses." (*See* Pet. at 40, ECF No. 1.)  He

7    contends he was prevented from presenting evidence which would have been

8    "exculpatory in nature" by purportedly establishing the following:

9              (1) [P]roof that Petitioner was in fact at the bank first when Blackburn
10             and Mantuano arrived, (2) Blackburn was never assaulted as alleged, (3)
               Petitioner was alleged to have evaded arrest when he was actually never
11             informed that an arrest warrant was issued in San Diego County as alleged,
               (4) Ms. Mantuano changed her story multiple times, in which Petitioner was
12             never afforded the means to present facts that would show the truth through
13             production of evidence and (5) at no time did Detective Derek Miller follow
               protoc[o]l in enforcing the warrant by using the address that showed where
14             Petitioner resided.
15

16   (Pet. at 40–41, ECF No. 1.)

17         Petitioner does not, however, indicate what evidence that he sought, but was

18   prevented from introducing at trial which would have supported each of the above

19   allegations.  He merely claims he could have established the above facts had he been

20   able to present some unidentified witness or evidence.  Such conclusory allegations, as

21   the state court found, are insufficient to establish a due process violation. *See James v.*

22   *Borg*, 24 F.3d 20, 24 (9th Cir. 1994) (stating that conclusory allegations do not warrant

23   habeas relief); *Jones*, 66 F.3d at 205; *Greenway v. Schriro*, 653 F.3d 790, 804 (9th Cir.

24   2011).

25         The only specific evidence Alexandre identifies in his argument is the "destruction

26   of dispatch tape[s]." (Pet. at 41, ECF No. 1.)  Petitioner appears to be referring to

27   recordings of 911 calls that were no longer available at the time of trial.  Defense counsel

28   admitted, however, to having received and reviewed the dispatcher notes and the

24

3:19-cv-1563-WQH-AHG

1   Computed-Aided Dispatch (CAD) reports as to each call.  (Lodgment No. 2, vol. 5 at

2   500–01, ECF No. 8-6.)  Petitioner does not claim to know how or if the 911 call

3   recordings would have been used to impeach witnesses or support his defense.  Thus, as

4   the trial court concluded, any claim of prejudice based on the 911 tapes was also

5   speculative, at best.  Therefore, the state court's denial of this claim was neither contrary

6   to, nor an unreasonable application of clearly established law.  *See Williams*, 529 U.S. at

7   407–08.

8         To the extent Petitioner is attempting to argue, as he did on direct appeal, that his

9   due process rights were violated because of "pre-indictment delay," his claim is also

10  speculative.  The Supreme Court has held that in some circumstances, delay prior to

11  arrest or indictment may give rise to a due process claim under the Fifth Amendment.

12  *See United States v. Lovasco*, 431 U.S. 783, 788–790 (1977), citing *United States v.*

13  *Marion*, 404 U.S. 307, 320–21 (1971) (declining to extend the reach of the Speedy Trial

14  Clause of the Sixth Amendment to the period before a defendant is indicted, arrested, or

15  otherwise officially accused).  "[P]roof of actual prejudice" is generally a necessary

16  element to prevail on a claim alleging excessive pre-indictment delay and "makes a due

17  process claim concrete and ripe for adjudication," but prejudice alone does not "make[]

18  the claim automatically valid." *Lovasco*, 431 U.S. at 789, 792–96 (declining to adopt a

19  rule requiring prosecutors to make charging decisions at any particular point during an

20  investigation, and holding that "to prosecute a defendant following investigative delay

21  does not deprive him of due process, even if his defense might have been somewhat

22  prejudiced by the lapse of time").  Reliance "solely on the real possibility of prejudice

23  inherent in any extended delay," such as "that memories will dim, witnesses become

24  inaccessible, and evidence be lost," are possibilities not in themselves adequate to show

25  that a defendant could not receive a fair trial due to pre-indictment delay.  *Marion*, 404

26  U.S. at 325–26.

27        The question of whether witnesses or evidence existed to support Alexandre's

28  defense is purely speculative.  Petitioner might have suffered the same absence of

1    supportive evidence even if he had been arrested weeks or months after incident—and it

2    is purely speculative to ask now whether Petitioner would have been able to successfully

3    develop such exculpatory evidence then.  Further, to the extent Alexandre attempts to

4    argue he had difficulty preparing a defense because memories faded and it was more

5    difficult to produce witnesses, such broad allegations are insufficient to establish actual

6    prejudice.  *See United States v. Huntley*, 976 F.2d 1287, 1290 (9th Cir. 1992) (the

7    petitioner "must demonstrate by definite and non-speculative evidence how the loss of a

8    witness or evidence is prejudicial to the [petitioner's] case"); *Prantil v. California*, 843

9    F.2d 314, 318 (9th Cir. 1988) (concluding that to prove actual prejudice, a petitioner

10   "must give more than 'mere assertions that . . . witnesses' memories may have faded with

11   the passage of time") (quoting *United States v. Horowitz*, 756 F.2d 1400, 1405 (9th Cir.

12   1985)).

13          The state court's denial of Alexandre's due process claim was neither contrary to,

14   nor an unreasonable application of, clearly established law.  *See Williams*, 529 U.S. at

15   412–13.  Likewise, the decision did not involve an "unreasonable determination of the

16   facts in light of the evidence presented in the state court proceedings."  *See Miller-El*, 537

17   U.S. at 340.  Claim four his therefore **DENIED**.

18          ***4.    Sentencing Based on False Evidence (Ground Five)***

19          In his fifth claim, Alexandre argues his sentence was improperly based on "false

20   evidence" contained in his probation report, in violation of his due process rights.  (Pet.

21   at 42–43, ECF No. 1.)  In addition, he appears to claim he did not receive "fair notice"

22   of the charges against him.  (*Id.* at 41.)  This Court looks to the last reasoned state court

23   decision to address the claims, which is the superior court's denial of Alexandre's

24   habeas petition.  *See Ylst*, 501 U.S. at 805–06.  After concluding the claim was

25   procedurally barred and the court went on to deny the claim on the merits, stating:

26          Petitioner asserts that the People's statement in aggravation and the
            probation report inaccurately stated that petitioner evaded arrest in this
27          case, failed to appear in a prior misdemeanor case in Los Angeles, and
28          failed to complete the domestic violence classes ordered in that prior

1    misdemeanor case.  Petitioner argues that had the statement in aggravation
2    and probation report contained accurate information, there is a strong
3    possibility that his sentence would have been different.

4         Petitioner submitted the transcript from his sentencing hearing and
5    the trial court gave a detailed explanation for the sentence imposed.  The
6    trial court primarily relied on the nature of the offense and petitioner's
     failure to learn from the prior misdemeanor, which was for domestic
7    violence.  The trial court never mentioned petitioner's purported evasion of
     arrest.  Additionally, the trial court did not rely on petitioner's purported
8    failure to attend domestic violence classes, but instead relied on his failure
9    to learn from those classes.  Finally, although the trial court briefly
     referenced petitioner's failure to appear in the prior misdemeanor case, the
10   evidence submitted by petitioner regarding that misdemeanor case indicates
     that he did in fact fail to appear on multiple occasions.  Defendant's only
11   explanation for his failure to appear is the conclusory allegation that it was
12   the result of miscommunications with his attorney.  Under these
     circumstances, petitioner has failed to show that there is a reasonable
13   probability that his sentence would have been different had counsel
14   pursued this claim.  Accordingly, this claim fails.

16   (Lodgment No. 12 at 6–7, ECF No. 8-27.)

17        Allegations of state law sentencing errors are not cognizable on federal habeas

18   review.  *See Miller v. Vasquez*, 868 F.2d 1116, 1118–19 (9th Cir. 1989).  For instance, a

19   petitioner's contention that a state trial court improperly exercised its discretion under

20   state sentencing law generally does not allege any cognizable claim for federal habeas

21   relief.  *See Brown v. Mayle*, 283 F.3d 1019, 1040 (9th Cir. 2002) (vacated on other

22   grounds, 538 U.S. 901 (2003), remanded to 66 Fed. Appx. 136 (9th Cir. 2003)).

23   Moreover, state sentencing courts have wide latitude in their decisions as to punishment.

24   *See Walker v. Endell*, 850 F.2d 470, 476 (9th Cir. 1987).  As such, federal courts

25   generally may not review a state sentence that is within statutory limits.  *See id.*

26        Nevertheless, the constitutional guarantee of due process is applicable at

27   sentencing.  *See Gardner v. Florida*, 430 U.S. 349, 358 (1977).  The Supreme Court has

28   held that federal courts may vacate a state sentence based on a violation of due process if,

1  for example, a state trial judge enhanced a sentence based on materially false evidence.

2  *Townsend v. Burke*, 334 U.S. 736, 741 (1948); *see also United States v. Hanna*, 49 F.3d

3  572, 577 (9th Cir. 1995); *Walker v. Endell*, 850 F.2d 470, 477 (9th Cir. 1987).  In

4  *Townsend*, the sentencing court relied upon prior charges which either did not involve the

5  defendant or of which he had been acquitted.  The Court found that such a result was

6  inconsistent with due process and therefore the conviction could not stand.  *Townsend*,

7  334 U.S. at 741.  However, the Court in *Townsend* also noted that due process is not

8  implicated by every factual error at sentencing.  *Id*.  Indeed, in *United States v. Tucker*,

9  404 U.S. 443 (1972), the Supreme Court held that it is only improper to sustain a

10  sentence when it is based upon "misinformation of constitutional magnitude."  *Id*. at 447.

11  Petitioner must also establish that the "challenged information demonstrably made the

12  basis for the sentence."  *Jones v. United States*, 783 F.2d 1477, 1480 (9th Cir. 1986); *see*

13  *also Stewart v. Erwin*, 503 F.3d 488, 495 (6th Cir. 2007) (stating that due process

14  concerns are implicated when a sentencing judge relies on "materially false or unreliable

15  information in sentencing a defendant," which the defendant has not been afforded the

16  opportunity to rebut).

17      Here, Alexandre claims the probation report prepared prior to his sentencing

18  contained "false evidence making it appear that Petitioner failed [to complete] probation"

19  after pleading guilty in 2008 to one count of misdemeanor domestic violence under

20  California Penal Code 273.5(a).  (*See* Pet. at 42–43, ECF No. 1.)  In the 2008 case, the

21  court ordered Alexandre to (among other things) complete a "52-week domestic violence

22  treatment program."  (*See* Lodgment No. 1 at 125–26, ECF No, 8-1.)  In the probation

23  report prepared for sentencing in the instant case, it was noted that on June 12, 2012,

24  Petitioner was "given credit for 26/52 [domestic violence] classes" attended by Petitioner

25  as part of his 2008 probation.  (*See id*. at 128, 193.)  Petitioner submits a treatment

26  program "progress report" dated October 22, 2012 which appears to indicate that he

27  completed an additional 26 domestic violence program sessions between June 18, 2012

28

3:19-cv-1563-WQH-AHG

1   and December 19, 2012.[6] (Pet. at 52, Ex. A, ECF No. 1.)  He also attaches transcript

2   from a February 6, 2013 probation progress hearing in the 2008 case, during which he

3   submitted proof he had completed "26 out of 26" domestic violence classes. (*Id.* at 55,

4   Ex. B.)  The judge then acknowledged he completed the class requirement, Petitioner

5   paid the remaining fines and court fees that same day and probation was terminated.

6   (Lodgment No. 1 at 130–31, ECF No. 8-1.)

7        First, it is not clear the information contained in the probation report was

8   inaccurate, as opposed to simply incomplete.  The February 6, 2013 minute order

9   terminating probation in Alexandre's 2008 case does not indicate whether Petitioner

10   completed the remaining 26 domestic violence classes, as indicated by the October 22,

11   2012 progress report. (*See* Lodgment No. 1 at 130, ECF No. 1.)  At the sentencing

12   hearing in the instant case, the judge noted that some "other judges don't require

13   [domestic violence classes] be completed" if there had been substantial compliance. (*See*

14   Lodgment No. 2, vol. 15 at 3211.)  Viewing the judge's comments in context, however, it

15   is clear from the sentencing hearing transcript the judge presumed Alexandre had

16   completed the class requirement.  During sentencing hearing, when Alexandre addressed

17   the court, the following exchange occurred:

18             THE COURT:    Did you learn from the course that you took as –

19                              after your first incident of domestic violence that
                                      that [sic] happened?

20

21             DEFENDANT:    I took the class.  I – I did everything that needed to

22                              be done, and I followed the law like a law-abiding
                                      citizen.  I did everything that needed to be done

23                               and even now so, I'm feeling regretful for

24

---

25   [6] While one portion of the form states "26 sessions attended," the comment section of the

26   form states "client successfully enrolled in our DV program on June 19, 2012 and
  successfully attended [a] total of 18 sessions."  The form does not clearly establish that

27   Petitioner "completed" the program; the box indicating "completion" of the program was

28   left blank while the box recommending "continued participation" is checked. (*See* Pet. at
  52, Ex. A, ECF No. 1.)

1    everything that had happened.

2
      THE COURT:       Well, my question had to do with having taken the
3                      class, didn't that provide you with the education so
4                      that you would understand how your actions could
                       be interpreted?
5
6     DEFENDANT:       Yes.

7
8    (Lodgment No. 2, vol. 15 at 3226–37.)

9         Later during the sentencing hearing, there was discussion about Alexandre's

10   failures to appear for hearings in the 2008 case.  The record indicates Alexandre failed to

11   appear for probation progress hearings multiple times from 2009 to 2013, when probation

12   was finally terminated.[7]  (*See* Lodgment No. 1 at 128–30.)  At sentencing, the judge's

13   focus was not on how many domestic violence classes Alexandre did or did not take.

14   Instead, when imposing the sentence, the trial judge emphasized that Alexandre had

15   exhibited a "pattern of action in escalating the domestic violence."  He noted that, despite

16   having previously been on probation for a similar offense, Alexandre had failed to "learn

17   from his behavior the first time."  (*Id.* at 3232.)

18

19   ───────────────

20   [7] Alexandre failed to appear for a progress report on August 20, 2009.  (Lodgment No. 1
     at 128, ECF No. 8-1.)  When he failed to appear again on September 4, 2009, probation
21   was revoked and a bench warrant issued.  (*Id.*)  The case then stalled until June 12, 2012
     when a bench warrant hearing was held.  Petitioner appeared for that hearing, the bench
22   warrant was recalled and Petitioner was ordered to return on October 19, 2012 with proof
     of his participation in domestic violence classes.  (*Id.* at 128–29.)  Alexandre failed to
23   appear at the October 19 hearing and another bench warrant was issued.  Petitioner
     appeared on October 23, 2012 and the warrant was recalled.  (*Id.* at 129–30.)  He was
24   again ordered to return on February 4, 2013 with proof of completion of domestic
25   violence classes.  (*Id.* at 130.)  When Alexandre failed to appear for that hearing, a bench
     warrant issued.  (*Id.* at 130–31.)  He then appeared on February 6, 2013 and the warrant
26   was recalled.  It appears Petitioner provided proof of his domestic violence class
27   attendance at the February 6, 2013 hearing, paid his remaining fines and probation was
28   terminated.  (*Id.* at 131.)

1    As such, Petitioner has failed to establish the trial judge relied on "false evidence"

2   at sentencing.  Even assuming arguendo that the information in the probation report was

3   somewhat incomplete, it did not contain "misinformation of constitutional magnitude."

4   *See Tucker*, 404 U.S. at 447.  In addition, as the state court concluded, the trial judge did

5   not base the sentence on the challenged information.  *See Jones*, 783 F.2d at 1480.

6   Review of the sentencing hearing transcript makes clear the trial judge based Alexandre's

7   sentence on the seriousness of the offenses and Alexandre's pattern of behavior. (*See*

8   Lodgment No. 2, vol. 15 at 3230–35, 3237–39.)

9    Lastly, Petitioner appears to further argue that he was "denied fair notice" of the

10   charges against him because of an "unnecessary delay" in executing the arrest warrant.

11   He claims that upon obtaining the arrest warrant, Detective Miller improperly "forwarded

12   [his] photo to authorities in New York when [he] was in fact in California, where he

13   resided until 2014." (Pet. at 42, ECF No. 1.)  He contends this purported error caused a

14   lengthy delay, depriving him of a fair trial. (*See id.*)  For the most part, this claim appears

15   to be a rehash of arguments made in claims one and four—that a delay in apprehending

16   him amounted to a due process violation—and is denied for the reasons discussed above

17   in section V(B)(1) and V(B)(3).  Additionally, the allegation that Detective Miller

18   forwarded the information related to the arrest warrant to improper authorities in New

19   York is conclusory.  Alexandre offers no evidence establishing that his residence was not

20   in New York at the time.  Indeed, as discussed above, Alexandre's own sentencing memo

21   states that he was a permanent resident of New York before and after the incident. (*See*

22   Lodgment No. 1 at 177.)  Furthermore, the superior court found that the "record therefore

23   establishes that petitioner was outside of California after [June 3, 2011], during which

24   time the statute of limitations [was] tolled." (Lodgment No. 12 at 3, ECF No. 8-27.)

25   This Court defers to the state court's factual determination and Alexandre has failed to

26   rebut it. *See Parke*, 506 U.S. at 35–36.

27    And to the extent Alexandre is alleging he lacked effective notice of the charges

28   against him, his claim is meritless.  It is clearly established law for purposes of 28 U.S.C.

§ 2254(d) that a criminal defendant has a Sixth Amendment right to be informed of any charges against him, and that a charging document, such as an information, is the means by which such notice is provided. *Gautt v. Lewis*, 489 F.3d 993, 1004 (9th Cir. 2007) (citing *Cole v. Arkansas*, 333 U.S. 196, 201 (1948)). To determine whether a defendant has received fair notice of the charges against him, the court looks first to the information, the principal purpose of which is to provide defendant with a description of the charges in sufficient detail to enable him to prepare a defense. *See James*, 24 F.3d at 24. An information is not constitutionally defective if it states "'the elements of an offense charged with sufficient clarity to apprise a defendant of what to defend against.'" *Miller v. Stagner*, 757 F.2d 988, 994 (9th Cir. 1985). Here, the information sufficiently apprised Alexandre of the criminal charges against which he had to defend: he was informed of the crimes by name, the relevant sections of the California Penal Code, the date (or range of dates) of the offenses, and the name of the victim. (*See* Lodgment No. 1 at 1–3, ECF No. 8-1.) As such, Petitioner has failed to establish he received notice in violation of due process.

In sum, the state court's denial of ground five was neither contrary to, nor an unreasonable application of, clearly established law. *See Williams*, 529 U.S. at 412–13; 28 U.S.C. §2254(d)(1). Moreover, the state court's adjudication did not involve an "unreasonable determination of the facts in light of the evidence presented in the state court proceedings," because Petitioner has not demonstrated that the state court's factual findings were objectively unreasonable. *See Miller-El*, 537 U.S. at 340; 28 U.S.C. § 2254(d)(2). Ground five is therefore **DENIED**.

### 5. *Ineffective Assistance of Trial Counsel (Ground Three)*

Alexandre argues he received ineffective assistance of trial counsel, in violation of

3:19-cv-1563-WQH-AHG

1    his Sixth Amendment rights.[8]   Specifically, he contends defense counsel failed to

2    challenge the trial court's jurisdiction to charge him on count four, failed to request

3    adequate jury instructions, failed to challenge his inability to present witnesses and

4    evidence and failed to argue his sentencing was improperly based on false evidence.

5    (Pet. at 36–41, ECF No. 1.)

6          Alexandre raised the claims in his petition for writ of habeas corpus to the

7    California Supreme Court, which was denied without comment or citation. (*See*

8    Lodgment Nos. 13, 14, ECF Nos. 8-28, 8-29.)  This Court therefore looks through to the

9    superior court's denial of the claim. *See Ylst*, 501 U.S. at 805–06.  The court stated,

10              Under his third claim, petitioner asserts ineffective assistance of trial
11         counsel and appellate counsel based on the failure to address the claims that
           are raised in the petition.  This claim is therefore denied for the reasons set
12         forth throughout this order.

13

14   (Lodgment No. 12 at 6, ECF No. 8-27.)

15                        a.    Clearly Established Law

16         To establish ineffective assistance of counsel, a petitioner must first show his

17   attorney's representation fell below an objective standard of reasonableness. *Strickland*,

18   466 U.S. at 688.  "This requires showing that counsel made errors so serious that counsel

19   was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."

20   *Id.* at 687.

21         Alexandre must also show he was prejudiced by counsel's errors. *Id.* at 694.

22   Prejudice can be demonstrated by a showing that "there is a reasonable probability that,

23   but for counsel's unprofessional errors, the result of the proceeding would have been

24   different.  A reasonable probability is a probability sufficient to undermine confidence in

25

26   _____

27   [8] To the extent the Petition includes references to ineffective assistance of counsel in
     sections devoted to other grounds for relief discussed above, the Court discusses them
28   together here.

33

1   the outcome." *Id.*; *see also Fretwell v. Lockhart*, 506 U.S. 364, 372 (1993). "The

2   likelihood of a different result must be substantial, not just conceivable." *Richter*, 562

3   U.S. at 112 (citing *Strickland*, 466 U.S. at 693). The Court need not address both the

4   deficiency prong and the prejudice prong if the defendant fails to make a sufficient

5   showing of either one. *Id.* at 697.

6        There is a "strong presumption that counsel's conduct falls within a wide range of

7   reasonable professional assistance." *Id.* at 686–87. "Surmounting *Strickland*'s high bar

8   is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010). "Representation

9   is constitutionally ineffective only if it 'so undermined the proper functioning of the

10  adversarial process' that the defendant was denied a fair trial." *Strickland*, 466 U.S. at

11  687.

12       Under the standards of both 28 U.S.C. § 2254(d) and *Strickland*, judicial review is

13  "highly deferential and when the two apply in tandem, review is doubly so." *Richter*, 562

14  U.S. at 105 (internal quotation marks and citations omitted). As a result, "the question

15  [under § 2254(d)] is not whether counsel's actions were reasonable. The question is

16  whether there is any reasonable argument that counsel satisfied *Strickland's* deferential

17  standard." *Id.* The *Strickland* prejudice analysis is complete in itself and there is no need

18  for an additional harmless error review under *Brecht*, 507 U.S. at 637. *See Musladin v.*

19  *Lamarque*, 555 F.3d 830, 834 (9th Cir. 2009) ("[W]here a habeas petition governed by

20  AEDPA alleges ineffective assistance of counsel under *Strickland v. Washington*, 466

21  U.S. 668 (1984), we apply *Strickland's* prejudice standard and do not engage in a

22  separate analysis applying the *Brecht* standard."); *Avila v. Galaza*, 297 F.3d 911, 918 n.7

23  (9th Cir. 2002).

24          b.   Failure to Challenge Jurisdiction on Count Four

25       Here, Petitioner first argues defense counsel was ineffective because she failed to

26  challenge the trial court's jurisdiction over count four, California Penal Code section

27  136.1(b), because the statute of limitations had expired. (Pet. at 38–41, ECF No. 1.) As

28  noted above, the superior court found Petitioner "failed to show the statute of limitations

34

1  was not sufficiently tolled [under California law]. Accordingly, petitioner has failed to

2  show a deficient representation regarding this claim." (Lodgment No. 12 at 4, ECF No.

3  8-27.) As the superior court noted, the statute of limitations for Penal Code section 136.1

4  is three years. Cal. Penal Code § 801. The statute may be tolled up to three years when a

5  defendant is out of state after commission of the alleged crime. Cal. Penal Code § 803(d)

6  ("[N]o time up to a maximum of three years during which the defendant is not within the

7  state shall be a part of those limitations"); *see also People v. Lynch*, 182 Cal. App. 4th

8  1262, 1271 (Cal. Ct. App. 2010). Moreover, under California law, "'the prosecution may

9  amend the information after the preliminary hearing to charge any offense shown by the

10  evidence adduced at the preliminary hearing provided the new crime is transactionally

11  related to the crimes for which the defendant has previously been held to answer.'"

12  *People v. Superior Court (Mendella)*, 33 Cal. 3d 754, 764 (Cal. 1983).

13      As the superior court found, the complaint was filed on September 7, 2011,

14  charging Alexandre with counts one through three. (*See* Lodgment No. 1 at 35–36, ECF

15  No. 1.) An arrest warrant was issued the same day. (*Id.*) Petitioner was arraigned on the

16  charges on October 19, 2015 after being apprehended and extradited from New York.

17  (*See id.* at 16, 36.) A preliminary hearing was held on November 20, 2015 and the

18  complaint was amended to add count four, which involved the same June 3, 2011 events

19  as counts one and three. (*See id.* at 1–2, 216.) Alexandre was then arraigned on the four-

20  count information on December 8, 2015. (*Id.* at 217.) Thus, under California law, the

21  complaint was properly amended to add count four, regardless of any tolling of the

22  statute of limitations. *See Mendella*, 33 Cal. 3d at 764. Further, even assuming tolling of

23  the statute of limitations was required, the state court found that "the record establishes

24  that petitioner was outside of California after the offense in count 4 occurred, during

25  which the statute of limitations would be tolled." (Lodgment No. 12 at 4, ECF No. 8-27.)

26  This Court defers to the state court's factual finding. *See* 28 U.S.C. § 2254(e)(1); *see*

27  *also Parke*, 506 U.S. at 35–36 (holding findings of historical fact, including inferences

28  properly drawn from those facts, are entitled to statutory presumption of correctness).

1    Alexandre offers nothing beyond self-serving, conclusory allegations that he
2  resided in California until 2014.  Petitioner alleges he received traffic tickets in
3  California, one in 2011 and one in 2013, which he argues establish he was living in
4  California at the time.  First, there is no name or identifying information on the printout
5  from the California Department of Motor Vehicles Petitioner relies upon.  (*See* Pet., Ex.
6  C at 59, ECF No. 1.)  Nonetheless, even assuming Petitioner did receive traffic tickets in
7  California on two occasions, this does not rebut the presumption that Petitioner was
8  nonetheless still residing outside of California at the time.  Nor do the vague printouts of
9  Facebook posts Petitioner points to rebut the presumption that he resided outside of
10 California during that time.  *See Parke*, 506 U.S. at 35–36 (stating a petitioner may rebut
11 the presumption of correctness, but only by clear and convincing evidence).

12    Defense counsel's failure to argue the court lacked jurisdiction over count four was
13 neither unreasonable or prejudicial because any such motion would have been denied.
14 Failure to make a futile motion does not constitute ineffective assistance of counsel.
15 *James*, 24 F.3d at 27; *see also Morrison v. Estelle*, 981 F.2d 425, 429 (9th Cir. 1992)
16 (finding that a claim of ineffective assistance of appellate counsel on the ground that
17 counsel failed to argue inadequate notice of the charge must fail because counsel "would
18 not have been successful"); *United States v. Zazzara*, 626 F.2d 135, 138 (9th Cir. 1980)
19 (finding that a claim of ineffective assistance of trial counsel on the ground that counsel
20 failed to move to dismiss an indictment must fail because such a motion would have been
21 futile).  Thus, Alexandre is not entitled to relief.

22             c.    Failure to Request Instruction
23    Next Petitioner argues defense counsel was ineffective in failing to object to
24 erroneous and incomplete jury instructions.  (Pet. at 39, ECF No. 1.)  As discussed above
25 in section V(B)(2) of this Order, the state court reasonably concluded the jury was
26 properly instructed on the standard of proof and the requisite intent required to find
27 Petitioner guilty on count one and the great bodily injury enhancement.  Furthermore, the
28 state court concluded that because there was no instructional error, "[P]etitioner has

1    failed to show deficient representation" by defense counsel for failure to object.

2    (Lodgment No. 12 at 5–6.)  As such, defense counsel's failure to object to the instructions

3    was neither unreasonable, nor prejudicial because it would have been futile.  *See James*,

4    24 F.3d at 27.

5                    d.    Failure to Present Witnesses and Evidence

6          Alexandre argues trial counsel was ineffective in failing to object to his inability to

7    present exculpatory testimony and evidence.  (Pet. at 39, ECF No. 1.)  Contrary to

8    Petitioner's allegations, however, trial counsel argued at length during a Petitioner's

9    speedy trial hearing that the case should be dismissed because of the delay in arresting

10   Petitioner and potential loss of evidence.  (*See generally*, Lodgment Nos. 2–6.)  Further,

11   as discussed in section V(B)(3) of this Order, Petitioner's allegations he was erroneously

12   prevented from presenting such evidence were conclusory and speculative.  Thus,

13   defense counsel's performance was neither deficient nor prejudicial.  *See Strickland*, 466

14   U.S. at 687.

15                  e.    Failure to Object to Facts in Probation Report

16         Alexandre contends defense counsel was ineffective for failing to object to

17   purported inaccuracies in the probation report prepared prior to sentencing.  (*See id.* at

18   39, ECF No. 1.)  At sentencing, defense counsel argued at length that Alexandre should

19   be given a lenient sentence, including advocating for probation.  (*See* Lodgment No. 2,

20   vol. 15 at 3210–12.)  She specifically argued that, although it was not entirely clear from

21   the minute orders in Alexandre's 2008 case, it appeared he had completed all 52 required

22   domestic violence classes.  (*Id.* at 3210–11.)  She further argued that Petitioner's failures

23   to appear in the 2008 case should not be held against him because they were most likely

24   due to miscommunication between Petitioner and his defense counsel in that case.  (*See*

25   *id.* at 3215.)  Moreover, as discussed above, based on the trial judge's comments at

26   sentencing, it is clear he based Alexandre's sentence, not on any missed domestic

27   violence classes or failures to appear, but rather Alexandre's conduct in committing the

28   offense and the apparent escalation in behavior despite having previously completed

1    probation in a misdemeanor domestic violence case. (*Id.* at 3232–35.)  Therefore,

2    Petitioner has not established defense counsel's representation was deficient or that he

3    was prejudiced as a result. *See Strickland*, 466 U.S. at 687.

### f.    Conclusion

5        For the foregoing reasons, the state court's denial of Alexandre's claims of

6    ineffective assistance of trial counsel was neither contrary to, nor an unreasonable

7    application of, clearly established law. *See Williams*, 423 U.S. at 412–13.  In addition,

8    the state court's adjudication did not involve an "unreasonable determination of the facts

9    in light of the evidence presented in the state court proceedings," because Petitioner has

10   not demonstrated that the state court's factual findings were objectively unreasonable.

11   *See Miller-El*, 537 U.S. at 340.  Petitioner's claims of ineffective assistance of trial

12   counsel are therefore **DENIED**.

### 6.    *Ineffective Assistance of Appellate Counsel (Ground Seven)*

14       In ground seven, Alexandre argues he received ineffective assistance of appellate

15   counsel, in violation of his Sixth Amendment rights. (*See* Pet. at 46–47, ECF No. 1.)

16   He claims appellate counsel was ineffective in failing to raise the above claims

17   presented in this petition on direct appeal. (*See id.* at 46.)  In the last reasoned decision

18   to address the merits of the claims, the superior court denied them, stating:

> Under his seventh claim, petitioner again asserts ineffective
> assistance of appellate counsel based on the failure to address the claims
> that are raised the petition.  For the reasons stated above, this claim is
> denied.
>
> Petitioner also raises a new issue under this claim.  In petitioner's
> opening brief on appeal, appellate counsel argued that the trial court failed
> to include a statement of reason for the imposition of a consecutive
> sentence for Counts 2 and 3.  In respondent's opening brief, the respondent
> argued that this claim was forfeited because trial counsel failed to object at
> trial.  Petitioner now argues that his appellate counsel failed to follow up on
> the forfeiture issue and failed to use accurate and relevant legal grounds.
>
> The respondent correctly asserted that the claim was forfeited due to

1    lack of an objection in the trial court. (See, e.g., *People v. Scoll* (1994) 9
2    Cal.4th 331, 356.)  As such, appellate counsel was presented with an
     obstacle to pursuing the claim.  In the reply brief, appellate counsel argued
3    that if the court concluded that the claim was forfeited, it should
4    nonetheless review the claim based on ineffective assistance of counsel.
     Appellate counsel therefore came up with a valid legal theory for the
5    appellate court to address the claim despite the obstacle that was presented.
6    Under these circumstances, petitioner has failed to show that appellate
     counsel's performance fell below an objective standard of reasonableness.
7

8    (Lodgment No. 12 at 7–8., ECF No. 8-27.)

9         It is clearly established that "[t]he proper standard for evaluating [a] claim that

10   appellate counsel was ineffective . . . is that enunciated in *Strickland.*"  *Smith v. Robbins*,

11   528 U.S. 259, 285 (2000) (citing *Smith v. Murray*, 477 U.S. 527, 535–36 (1986)).  A

12   petitioner must first show that his appellate counsel's performance fell below an objective

13   standard of reasonableness.  *Strickland*, 466 U.S. at 688.  Specifically, a petitioner must

14   show that counsel "unreasonably failed to discover nonfrivolous issues and to file a

15   merits brief raising them."  *Smith*, 528 U.S. at 285.  He must then show he was prejudiced

16   by counsel's errors.  *Strickland*, 466 U.S. at 694.  To establish prejudice, Alexandre must

17   demonstrate that she would have prevailed on appeal absent counsel's errors.  *Smith*, 528

18   U.S. at 285.

19        The Ninth Circuit has observed that:

20            [*Strickland's*] two prongs partially overlap when evaluating the
              performance of appellate counsel. In many instances, appellate counsel will
21            fail to raise an issue because she foresees little or no likelihood of success on
              that issue; indeed, the weeding out of weaker issues is widely recognized as
22            one of the hallmarks of effective appellate advocacy. . . . Appellate counsel
              will therefore frequently remain above an objective standard of competence
23            (prong one) and have caused her client no prejudice (prong two) for the
24            same reason – because she declined to raise a weak issue.

25

26   *Miller v. Keeney*, 882 F.2d 1428, 1434 (9th Cir. 1989).  An indigent defendant "does not

27   have a constitutional right to compel appointed counsel to press nonfrivolous points

28   requested by the client, if counsel, as a matter of professional judgment, decides not to

39

1  present those points." *Jones v. Barnes*, 463 U.S. 745, 751 (1983).  Counsel "must be

2  allowed to decide what issues are to be pressed." *Id*.  Otherwise, the ability of counsel to

3  present the client's case in accord with counsel's professional evaluation would be

4  "seriously undermined." *Id.; see also Smith v. Stewart*, 140 F.3d 1263, 1274 n. 4 (9th

5  Cir. 1998).

6         Petitioner contends that appellate counsel was ineffective for failing to raise claims

7  one, two, four and five on direct appeal, even after he urged appellate counsel to do so.

8  (Pet. at 46, ECF No. 1.)  Appellate counsel's decision not to raise the claims on appeal

9  was neither deficient performance nor prejudicial because, as discussed above in sections

10  V(B)(1)–(4) of this Order, the claims lacked merit and as such, Petitioner would not have

11  prevailed on appeal had appellate counsel raised them. *See also Jones*, 463 U.S. at 752–

12  53 (1983) (appellate counsel had no duty to raise every issue on appeal where, in the

13  attorney's judgment, the issue had little or no likelihood of success).  Appellate counsel's

14  declination to argue meritless issues on appeal did not amount to ineffective assistance of

15  appellate counsel. *See Miller*, 882 F.3d at 1434.  Further, as the Court has explained in

16  section V(B)(5) of this Order, Petitioner has not demonstrated that he received ineffective

17  assistance from trial counsel.  For that reason, Petitioner cannot show that he was

18  prejudiced by appellate counsel's failure to present a claim of ineffective assistance of

19  trial counsel on appeal. *See Wildman v. Johnson*, 261 F.3d 832, 840 (9th Cir. 2001).

20         Lastly, Petitioner argues appellate counsel failed to properly argue on appeal that

21  the trial court improperly imposed consecutive sentences on counts two and three. (Pet.

22  at 46–47, ECF No. 1.)  As the superior court found, appellate counsel did raise the claim

23  on direct appeal. (*See* Lodgment No. 3 at 21–29, ECF No. 8-17.)  Appellate counsel also

24  argued in the alternative that, if the court found the consecutive sentencing issue was

25  waived by trial counsel's failure to object at trial, the sentence should nonetheless be

26  reversed because defense counsel was ineffective under the Sixth Amendment. (*Id.* at

27  30–35.)  Thus, appellate counsel's performance was not unreasonable. *Jones*, 463 U.S. at

28  751.

1    For the foregoing reasons, the state court's denial of Petitioner's claims of

2  ineffective assistance of appellate counsel was neither contrary to, nor an unreasonable

3  application of, clearly established law. *See Williams*, 423 U.S. at 412–13.  Nor was it

4  based on an "unreasonable determination of the facts in light of the evidence presented in

5  the state court proceedings." *See Miller-El*, 537 U.S. at 340.  Claim seven is therefore

6  **DENIED**.

7            **7.    *Cumulative Error (Ground Six)***

8    Finally, Alexandre argues his due process rights were violated by the cumulation

9  of the errors alleged in the Petition. (*See* Pet. at 43–46, ECF No. 1.)  He raised this claim

10  in the California Supreme Court and it was denied without comment. (*See* Lodgment

11  Nos. 13, 14, ECF Nos. 8-28, 8-29.)  The superior court's opinion denying Alexandre's

12  habeas petition is the last reasoned decision addressing this claim. *See Ylst*, 501 U.S. at

13  805–06.  The court denied that claim, stating that "[none of the claims in the petition have

14  merit, therefore the claim of cumulative error fails." (Lodgment No. 12 at 7, ECF No. 8-

15  27.)

16    Under the cumulative error doctrine, the combined effect of multiple trial errors

17  may give rise to a due process violation if it renders a trial fundamentally unfair, even if

18  each error considered individually would not warrant relief. *See Parle v. Runnels*, 505

19  F.3d 922, 928 (9th Cir. 2007) (characterizing this principle as clearly established by the

20  Supreme Court).  The Ninth Circuit has also applied this principle in the context of

21  *Strickland* and has held that prejudice may result from the cumulative effect of multiple

22  deficiencies by counsel. *Harris v. Wood*, 64 F.3d 1432, 1438 (9th Cir. 1995).

23    For the reasons discussed above, the Court concludes that no error of constitutional

24  magnitude occurred.  As such, the state court's determination was not unreasonable or

25  contrary to clearly established federal law.  *See Rupe v. Wood*, 93 F.3d 1434, 1445 (9th

26  Cir. 1996) (rejecting cumulative error claim where court found no constitutional errors);

27  *Williams*, 529 U.S. at 407–08.  Therefore, claim six is **DENIED**.

28  ///

## VI.   REQUEST FOR JUDICIAL NOTICE

In his Petition, Alexandre requests this Court take judicial notice of several documents:  (1) the October 22, 2012 domestic violence program progress report (Pet., Ex. A at 52), (2) the transcript of the February 6, 2013 hearing terminating probation (*id.*, Ex. B at 54–56), (3) Department of Motor Vehicle records (*id.*, Ex. C at 59), (4) printouts of old Facebook posts (*id.* at Ex. D at 61–63), and (5) numerous documents that are part of the state court record in this case, including the declaration in support of arrest warrant (*id.*, Ex. E at 65–67), the defense motion for a speedy trial (*id.* Ex. F at 69–86), the information (*id*, Ex. G at 67–69), several state court decisions (*id.*, Exs. H–J at 93–105), jury instructions (*id.*, Ex. K at 107–20), and the sentencing hearing transcripts (*id.* Ex. L at 123–65). (*See* Pet. at 50–51, ECF No. 1.)

Judicial notice is governed by Federal Rule of Evidence 201 which concerns judicial notice of adjudicative facts.  "A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201.  In other words, "the fact must be one that only an unreasonable person would insist on disputing." *United States v. Jones*, 29 F.3d 1549, 1553 (11th Cir. 1994).  Documents that are part of the public record may be judicially noticed to show, for example, that a judicial proceeding occurred or that a document was filed in another court case, but a court may not take judicial notice of findings of facts from another case. *See Wyatt v. Terhune*, 315 F.3d 1108, 1114 & n. 5 (9th Cir. 2003); *Lee v. City of Los Angeles*, 250 F.3d 668, 698 (9th Cir. 2001).  Nor may the court take judicial notice of any matter that is in dispute. *Lee*, 250 F.3d at 689–90.

To the extent Alexandre seeks to have this Court take judicial notice of documents that were filed in state court as part of the instance case, including the complaint, arrest warrant affidavit, defense motions, court orders, jury instruction and the probation report (*see* Pet., Exs. E–L, ECF No. 1), his request is DENIED as MOOT.  These exhibits were

1   part of the state court record reviewed by the California Supreme Court and therefore are

2   already part of record before this Court. *See Cullen v. Pinholster*, 563 U.S. 170, 181

3   (2011) (holding that "review under § 2254(d)(1) is limited to the record that was before

4   the state court that adjudicated the claim on the merits").

5           As to exhibits related to Petitioner's 2008 conviction—the domestic violence class

6   progress report (Pet., Ex. A at 52, ECF No. 1), and the transcript of his February 6, 2013

7   probation progress hearing (*id.*, Ex. B at 54–56)—the Court GRANTS Petitioner's

8   request to take judicial notice that the documents were submitted to the court and the

9   hearing held as transcribed. *See Wyatt*, 315 F.3d at 1114. To the extent he seeks to have

10  this Court take judicial notice of any facts or arguments contained in the document or

11  transcripts in that case, his request is DENIED.

12          Finally, the Facebook postings (Pet., Ex. D at 61–63) were a matter of factual

13  dispute as to who posted them and when. *See Lee*, 250 F.3d at 688–89 (noting "a court

14  may take judicial notice of matters of public record" and documents whose "authenticity

15  . . . is not contested" and upon which a plaintiff's complaint relies) (internal quotation

16  marks omitted) (alterations in original). Likewise, the Department of Motor Vehicle

17  (Pet., Ex. C at 59, ECF No. 1) records lack an identifying information and therefore are

18  not "capable of accurate and ready determination" by a factfinder. *See Lee*, 250 F.3d at

19  689–90. The Court therefore DENIES Petitioner's request to take judicial notice of

20  Facebook posting printouts and Department of Motor Vehicle records.

21          Based on the foregoing the Court **DENIES** Petitioner's request for judicial notice

22  as to Exhibits C through L and **GRANTS** the request as to Exhibits A and B. The Court

23  notes that to the extent any of the exhibits were already part of the state court record, the

24  have been reviewed and considered by this Court. *See Pinholster*, 563 U.S. at 181.

25  **VII.   CERTIFICATE OF APPEALABILITY**

26          Under AEDPA, a state prisoner seeking to appeal a district court's denial of a

27  habeas petition must obtain a certificate of appealability. 28 U.S.C. § 2253(c)(1)(A).

28  The district court may issue a certificate of appealability if the petitioner has made a

1   substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  To

2   satisfy this standard, a petitioner must show that "reasonable jurists would find the

3   district court's assessment of the constitutional claims debatable or wrong." *Slack v.*

4   *McDaniel*, 529 U.S. 473, 484 (2000).

5        The federal rules governing habeas cases brought by state prisoners require a

6   district court that issues an order denying a habeas petition to either grant or deny a

7   certificate of appealability. *See* Rules Governing § 2254 Cases, Rule 11(a).  The Ninth

8   Circuit has noted that the standard for granting a certificate of appealability is "relatively

9   low." *Jennings v. Woodford*, 290 F.3d 1006, 1010 (9th Cir. 2002).  A petitioner "need

10  not show that he should prevail on the merits," *Lambright v. Stewart*, 220 F.3d 1022,

11  1025 (9th Cir. 2000), but may be entitled to a certificate when the "questions are

12  adequate to deserve encouragement to proceed further." *Barefoot v. Estelle*, 463 U.S.

13  880, 893 n. 4 (1983) (superseded on other grounds by 28 U.S.C. § 2253(c)(2)).  Here,

14  Alexandre has failed to make "a substantial showing of the denial of a constitutional

15  right," and reasonable jurists would not find debatable this Court's assessment of his

16  claims. *See Slack*, 529 U.S. at 484.  Accordingly, a certificate of appealability **DENIED**.

17  **VIII. CONCLUSION**

18        Based on the foregoing, the Court **DENIES** the petition for writ of habeas corpus,

19  **GRANTS** in part and **DENIES** in part Petitioner's request for judicial notice and

20  **DENIES** a certificate of appealability.

21  **IT IS SO ORDERED.**

22

23  DATED 3/5/20

24                                William Q. Hayes
                                  United States District Judge
25

26

27

28

44